IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

LORI SMITH,                              )
on behalf of A.S., a minor,              )
                                         )
      Plaintiff,                        )
                                         )
v.                                       )        CASE NO. 1:19-CV-911-KFP
                                         )
KILOLO KIJAKAZI,                         )
Acting Commissioner of Social Security,[1] )
                                         )
      Defendant.                        )

## MEMORANDUM OPINION AND ORDER

On May 22, 2007, Plaintiff Lori Smith, on behalf of her minor son A.S., filed an

application for child's Supplemental Security Income. R. 63. On January 14, 2009, the

Social Security Administration determined that A.S. met the medical requirements for

disability benefits beginning on May 22, 2007. R. 60. However, in June 2017, the Social

Security Administration determined that, as of June 1, 2017, A.S. was no longer disabled

and ceased his disability benefits. R. 81, 84. Plaintiff filed a timely written request for a

hearing before an Administrative Law Judge (R. 165), and a hearing was held on October

1, 2018. R. 40. Following the hearing, on December 18, 2018, the ALJ issued an

unfavorable decision finding A.S. was no longer disabled as of June 1, 2017. R. 12, 32.

The Appeals Council denied Plaintiff's request for review (R. 1), and the ALJ's decision

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party under Rule 25(d) of the Federal Rules of Civil Procedure. *See also* 42 U.S.C. § 405(g) (providing that an action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

became the final decision of the Social Security Commissioner. This case is now before the Court for judicial review of that decision under 42 U.S.C. § 405(g). After careful scrutiny of the record and the parties' briefs, the Court AFFIRMS the Commissioner's decision for the reasons set forth below.

## I.    STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's factual findings are conclusive if supported by substantial evidence. *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Substantial evidence is more than a scintilla; it is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The Court must view the evidence as a whole, considering evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Id.* No presumption of validity attaches to the Commissioner's legal conclusions, and the Court's review of the Commissioner's legal conclusions is *de novo. Lewis*, 285 F.3d at 1330; *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## II.    STATUTORY AND REGULATORY FRAMEWORK

A claimant (or his parent or guardian) bears the burden of providing evidence that he is disabled. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a), (c); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). For a child under the age of 18 to be considered disabled and eligible for SSI under the Act, the child must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C). The phrase "marked and severe functional limitations" refers to "a level of severity that meets, medically equals, or functionally equals" the Listing of Impairments found at 20 C.F.R. § 404, subpart P, appendix 1. 20 C.F.R. § 416.902(h), (o).

In evaluating a claim for child's SSI, the Commissioner follows a three-step evaluation process. At step one, the Commissioner determines whether the claimant is performing substantial gainful activity. *See* 20 C.F.R. § 416.972. If the claimant is not, the analysis proceeds to the second step. *See* 20 C.F.R. § 416.924(b).

At step two, the Commissioner determines whether the claimant has a medically determinable impairment or combination of impairments that is severe. *See* 20 C.F.R. § 416.924(a). For a child under the age of 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. *See* 20 C.F.R.

§ 416.924(c). If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step. *See* 20 C.F.R. § 416.924(a).

At step three, the Commissioner determines whether the claimant has an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of a Listing. In making this determination, the Commissioner must consider the combined effect of all medically determinable impairments, including those that are not severe. *See* 20 C.F.R. §§ 416.923, 416.924a(b)(4), 416.926a(a), (c). If the claimant has an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of a Listing, and it has lasted or is expected to last for a continuous period of at least 12 months, he is presumed to be disabled. If not, the claimant is not disabled. *See* 20 C.F.R. § 416.924(d).

If a child's impairment or combination of impairments does not meet or medically equal a Listing, the Commissioner will evaluate whether a child's impairment functionally equals a Listing by considering the following six broad functional areas, called domains: (i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and (vi) Health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). If a child has an extreme limitation in one domain or marked limitations in two domains, the child's impairment is functionally equivalent to a Listing. *See* 20 C.F.R. § 416.926a(d).

Finally, when evaluating whether a child who was once found disabled remains eligible for benefits, the Commissioner must follow another three-step analysis. *See* 20

C.F.R. § 416.994a(b). First, the Commissioner must determine whether there has been medical improvement in the child's impairment. *Id.* § 416.994a(b)(1). Medical improvement means "any decrease in the medical severity of [the child's] impairment(s) which was present at the time of the most recent favorable decision that [the child was] disabled." *Id.* § 416.994a(c). If there has been medical improvement, the Commissioner must then, in step two, analyze whether the child's impairment still meets or medically equals the severity of the Listing that he met or equaled before or at the time of the disability finding. *Id.* § 416.994a(b)(2). If not, the Commissioner proceeds to step three and determines if the child is currently disabled, considering all the impairments the claimant has now, including any not presented or not considered in the earlier finding of disability. *Id.* § 416.994a(b)(3).

## III.    BACKGROUND

### A.    Factual Background

When the Social Security Administration determined A.S. was no longer disabled and ceased his disability benefits, A.S. was 10 years old and in the third grade taking part in a special education program. R. 69, 302. At the time of the hearing before the ALJ, A.S. was 11 years old and in the fifth grade. R. 53.

A.S. initially received SSI based on a determination that his Neurofibromatosis type I with Noonan phenotype and developmental delay medically equaled the criteria of one of the Listings—section 112.02 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924(d), 416.925, and 416.926). R. 66. Plaintiff seeks the continuance of SSI because she claims that A.S. suffers from 24 impairments that impact "his academic performance,

his social interaction, his ability to play, his ability to care for himself, and his ability to function independently."[2] Doc. 16 at 9.

### B.     The ALJ's Decision

In her December 18, 2018 decision, the ALJ first found that the most recent favorable medical decision finding A.S. disabled was dated January 14, 2009. R. 18. This is known as the comparison point decision or CPD. R. 18. The ALJ then found that, at the time of the CPD, A.S. had the following medically determinable impairments: attention deficit hyperactivity disorder ("ADHD"), mild intellectual disorder, and neurofibromatosis. R. 18. Based on her review of the record, the ALJ concluded there had been a decrease in the medical severity of the impairments present at the time of the CPD and medical improvement had occurred as of June 1, 2017. R. 18. A.S. had made good grades in school over the past three years; his speech had improved and his prognosis was excellent; his treatment records did not reflect that any treating source had ever diagnosed him with ADHD; and, in any event, Plaintiff did not testify to any significant problems with attention or hyperactivity. R. 19. Next, the ALJ found that, since June 1, 2017, the impairments A.S. had at the time of the CPD did not meet or medically equal any of the Listings. R. 19.

The ALJ concluded A.S. had the following severe impairments since June 1, 2017: neurofibromatosis; borderline intellectual functioning; speech and language impairment;

---

[2] Plaintiff does not argue that A.S.'s current impairments meet or medically equal the criteria of a particular Listing. Instead, Plaintiff argues that his impairments *functionally* equal a Listing—that is, that A.S. has an extreme limitation in at least one domain or marked limitations in at least two domains. *See generally* Doc. 16.

and asthma. R. 20. The ALJ noted that A.S. had, at various times, also been diagnosed with gastroesophageal reflux disease, headache disorder, history of pseudotumor cerebri, and seizure disorder, but determined that those conditions were stable and well-controlled; there was no indication of any ongoing symptoms or complications from those impairments that had not been previously considered; and, even considered in combination, those impairments had no more than a minimal effect on A.S.'s functioning. R. 20. Thus, the ALJ determined that they were not severe. R. 20.

The ALJ next determined that, since June 1, 2017, the impairments A.S. had at the time of the CPD in combination with his current impairments did not functionally equal a Listing. R. 20. Specifically, the ALJ found that A.S. had a less than marked limitation in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and moving about and manipulating objects; no limitation in the domain of caring for oneself; and a marked limitation in health and physical well-being. R. 21-27. She noted that, while A.S.'s impairments could reasonably be expected to produce some symptoms, the statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the objective medical and other evidence. R. 28. Thus, the ALJ found that, since June 1, 2017, A.S. had not had an impairment or combination of impairments that functionally equaled a Listing. R. 27. Accordingly, the ALJ determined that A.S.'s disability ended as of June 1, 2017 and that he had not become disabled again since that date. R. 32.

## IV.    ISSUE BEFORE THE COURT

Plaintiff presents one primary issue for the Court to review: Did the Commissioner err by failing to determine that A.S. had marked limitations in at least two of the domains of functioning or an extreme limitation in at least the domain of health and physical well-being?[3]

## V.    DISCUSSION

Plaintiff argues that A.S. has an impairment or combination of impairments that functionally equals a Listing. Upon independent consideration of the record, the Court agrees with the Commissioner that the ALJ properly considered A.S.'s medical conditions and doctors' medical opinions and the ALJ's decision was supported by substantial evidence in the record.

### A.    The ALJ properly considered the medical opinion evidence.

An ALJ is required to give a treating source's medical opinion "substantial or considerable weight absent good cause." *Medina v. Soc. Sec. Admin.*, 636 F. App'x 490, 493 (11th Cir. 2016) (citing *Winschel*, 631 F.3d at 1179 and 20 C.F.R. § 404.1527(c)(2)). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion

---

[3] Plaintiff purports to raise three issues—the issue above; whether the Commissioner abused her discretion by failing to "consider the documentation from treating healthcare providers, including hydrencephalus, and the severity of the impact of the complicity of [A.S.'s] impairments"; and whether the Commissioner abused her discretion by failing to "determine [A.S.'s] eligibility based on all impairments." Doc. 16 at 6. The Court will consider each of these matters in its analysis; however, they all fall under the broader umbrella of whether the Commissioner's determination that A.S.'s impairments did not functionally equal a Listing constitutes error. Indeed, in her brief, Plaintiff combines all three of the purported issues in a single argument. *See* Doc. 16 at 13-22.

was conclusory or inconsistent with the doctor's own medical records.'" *Id.* (quoting *Winschel*, 631 F.3d at 1179).

As an initial matter, although Plaintiff argues that the ALJ erred by failing to give substantial weight to the opinions of A.S.'s treating medical providers, she fails to identify who those treating providers are or which opinion(s) she believes the ALJ did not properly assign weight.[4] *See Hicks v. Colvin*, No. 2:14-CV-917, 2015 WL 5895963, at *3 n.6 (M.D. Ala. Oct. 8, 2015) (noting the "general insufficiency" of a plaintiff's social security brief where the plaintiff's arguments were largely bare and conclusory; the plaintiff failed to cite to the record in support of her claims; and the plaintiff argued that more weight should have been given to her treating sources but failed to identify or describe any treating source opinion not properly considered by the ALJ). Because Plaintiff has not identified any treating providers' opinions she believes were entitled to more weight, and because the Court has not located in the record any medical opinions not considered by the ALJ, the Court considers the medical source opinions addressed by the ALJ in her determination.

It appears the only clearly identifiable treating source opinion in the record is the August 2017 opinion of treating provider Justin G. Hovey, M.D. R. 31, 632. Dr. Hovey's opinion states:

---

[4] As to A.S.'s medical providers, Plaintiff states simply: "The complicity of the cadre of [A.S.'s] physical impairments reduces [A.S.'s] functional capacity and renders him unable to perform even the most sedentary activities or care for himself independently. The various medical experts who either [sic] treated [A.S.] acknowledged this (15F)." Doc. 16 at 17. Not only does Plaintiff fail to name a single medical provider or cite to a single medical opinion she believes was improperly considered, but Exhibit 15F is completely contrary to Plaintiff's argument; it is a November 2017 Medical Evaluation/Case Analysis by Dr. Robert H. Heilpern, M.D., in which Dr. Heilpern, upon reviewing all the evidence in A.S.'s file, affirmed the determination that Plaintiff was no longer disabled. R. 1058-1059.

> [A.S.] is a child with mild persistent asthma, neurofibromatosis, seizures and gastroesophageal reflux disease. He is disabled and has many specialty appointments that requires traveling out of area during the day. Please reconsider your rejection of his disability. [A.S.] will need continued medical care and care for his lifetime.

R. 31, 632. The ALJ assigned little weight to this opinion for two reasons. First, she determined that it was conclusory. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877-78 (11th Cir. 2013) ("[T]he Commissioner, not a claimant's physician, is responsible for determining whether a claimant is statutorily disabled.[] Specifically, [a] statement by a medical source that [a claimant is] 'disabled' . . . does not mean that [the Commissioner] will determine that [the claimant is] disabled.") (internal citations and quotations omitted). Second, she found that it did not cite any specific limitations other than frequent travel to specialty medical appointments, which the record did not reflect. R. 31. Specifically, the ALJ noted:

> [T]here has been little follow-up with specialists. Records from Children's Health System in Birmingham indicate visits in July 2013, December 2013, September 2015, April 2016, and December 2016 . . . . Additionally, [A.S.] saw Dr. Korf in Birmingham in July 2015 and September 2015 . . . . There is no indication that [A.S.] has seen any out-of-town specialist since December 2016. [A] review of regular pediatric records reflect that these specialty appointments are made but seldom kept . . . . The only barrier cited has been transportation . . . but, as noted previously, [A.S.'s] mother has refused [transportation] assistance offered by [A.S.'s] local providers, which suggests that she is satisfied with the medical care [A.S.] receives locally.

R. 31. Thus, because the opinion was conclusory and contradicted by other evidence in the record, the ALJ demonstrated good cause for assigning the opinion little weight. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); *Crawford v. Comm'r of Soc. Sec.*,

363 F.3d 1155, 1159-60 (11th Cir. 2004). Accordingly, the ALJ did not err in discounting Dr. Hovey's opinion.

The ALJ also assigned little weight to the April 2017 opinion of consultative examiner David C. Ghostley, Psy.D. R. 32, 614. Dr. Ghostley opined that, "[a]ltogether, [A.S.]'s ability to function in an age-appropriate manner, cognitively, communicatively, socially, adaptively, behaviorally, and in concentration, persistence, and pace, is markedly impaired due to a confluence of physical and mental health problems." R. 615. The ALJ determined that the opinion was vague, lacking objective support, and generally not supported by the record evidence as a whole. R. 32. Specifically, the ALJ noted that Dr. Ghostley, as a psychologist, was not qualified to assess A.S.'s physical impairments. *See Jackson v. Saul*, No. CV 19-0029-MU, 2020 WL 5535877, at *5 (S.D. Ala. Sept. 15, 2020) ("[T]he Court finds that the ALJ did not err by according no weight to Dr. Way's opinions concerning Jackson's physical limitations because Dr. Way is a psychologist, not a specialist in physical impairments . . . ."). The specific impairment actually evaluated by Dr. Ghostley was borderline intellectual functioning, which the ALJ considered—and deemed severe—in her determination. Accordingly, the ALJ did not err in assigning Dr. Ghostley's opinion little weight.

Finally, the ALJ assigned significant weight to the opinions of Michael Rosenbaum, Ph.D., and Howard C. Harper, Jr., M.D., the state agency reviewing consultants. R. 31, 78-80. Drs. Rosenbaum and Harper opined that A.S. has less than marked limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for oneself, and health and

physical well-being R. 31, 78-80. The ALJ found these opinions to be generally supported by the evidence, which indicates that A.S. has a history of impairments "but has generally been stable medically, socially, and academically." R. 31. However, the ALJ noted that, in light of A.S.'s ongoing complaints with regard to chronic pain and the evidence of frequent school absences, a marked limitation in the domain of health and physical well-being was more appropriate. R. 31.

The ALJ's assignment of significant weight to these opinions was not erroneous. The opinion of a state agency examiner may be entitled to great weight if supported by the evidence, as in this case. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); SSR 96-6P (S.S.A. July 2, 1996) ("Findings of fact made by State agency medical and psychological consultants . . . regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the [ALJ] and Appeals Council levels of administrative review."). The ALJ properly considered the opinions of Drs. Rosenbaum and Harper in light of the record as a whole. *See Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 874 (11th Cir. 2011) (holding that ALJ did not err in assigning significant weight to state agency medical consultants instead of the treating physician "because their opinions were supported by the record"); *Ogranaja v. Comm'r of Soc. Sec.*, 186 F. App'x 848, 851 (11th Cir. 2006) (holding that substantial evidence supported ALJ's decision to assign great weight to non-examining state agency physicians' opinions that "were supported by and consistent with the record as a whole"); 20 C.F.R. §§ 404.1527(b)-(c), 416.927(b)-(c) (providing that the weight a non-examining physician's opinion receives depends on its clinical findings and consistency with other evidence).

Here, the ALJ specifically stated that these opinions were supported by the evidence in the record, which indicates that A.S. has a history of impairments "but has generally been stable medically, socially, and academically." R. 31. Throughout her decision, she cited specific record evidence in support of that finding, including that A.S. was primarily treated conservatively, with appointments scheduled but not kept with specialists; that A.S. generally got along well with others, including his teachers, other adults, and children his own age; and that A.S. earned As and Bs the prior three years in school. R. 19, 24, 30; *see also Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671, 671-72 (11th Cir. 2014) (noting that evaluation of consultative examiner, which was more consistent with other evidence in the record, such as objective medical findings, claimant's conservative treatment, and the routine activities of claimant, provided sufficient reason to discount treating physician's opinion). The Court finds no error in the ALJ's assessment. Although there may also be some evidence in the record supporting a finding contrary to the ALJ's, the Court is not entitled to decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *See Winschel*, 631 F.3d at 1178. This is true even if the evidence preponderates against the ALJ's findings. *See Gibbs v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 799, 800 (11th Cir. 2017).

**B.    The ALJ properly considered A.S.'s medical impairments.**

Plaintiff states that A.S. suffers from the following twenty-four impairments and argues that they, "taken individually or in tandem, are extreme in nature and meet the requirements for two or more domains being extreme": Neurofibromatosis, Type I; Noonan Syndrome Phenotypes; Cafe Au Le Spots; Multiple Tumors; Hydrocephalus; Speech

Delay; Mobility Impairment for Hip Dysplasia; Bone Deformities; Asthma; Learning Disability; Severe Headaches; Neuropathy; Lisch Nodules; Papilledema; Tumors; Scoliosis; Leukocytosis; Gait Disturbance; Seizures; Altered Mental State; Concussion; ADHD; Borderline Intellectual Functioning; and Gastroesophageal Reflux. Doc. 16 at 10-11, 17. Plaintiff argues that the ALJ failed to consider all of these alleged impairments in her decision and that "[a] more in-depth review of [A.S.'s] medically determined impairments . . . and a better review of the evidence" would have resulted in a favorable outcome for A.S. Doc. 16 at 14.

Upon review of the ALJ's decision, the Court first finds that the ALJ explicitly considered the vast majority of these alleged impairments. In her opinion, the ALJ found that, since June 1, 2017, A.S. had severe impairments of neurofibromatosis; borderline intellectual functioning; speech and language impairment; and asthma. R. 20. The ALJ noted that, as a result of the neurofibromatosis, A.S. had developed multiple tumors, but the medical evidence did not demonstrate they were cancerous. R. 27. The ALJ stated that A.S. had, at various times, also had diagnoses of gastroesophageal reflux disease, headache disorder, pseudotumor cerebri, and seizure disorder. R. 20. She noted, however, that all of those medical findings were "mostly asymptomatic" or "readily responsive to treatment" (R. 27) and, even considered in combination, had no more than a minimal effect on A.S.'s functioning (R. 20). The ALJ considered A.S.'s ADHD, noting that "[t]he treatment records do not reflect that any treating source has diagnosed this condition, [Plaintiff] did not testify to any significant problems with attention or with hyperactivity[,] [and] ADHD is not considered to be a medically determinable impairment." R. 19. The ALJ also

considered A.S.'s mobility impairments, discussing his leg braces and occasional wheelchair use as well as Plaintiff's testimony regarding his ability to run, walk, jump, play, and engage in other activities. R. 25.

Many of the remaining alleged impairments listed by Plaintiff, such as café-au-lait spots and Lisch nodules, appear to be conditions stemming from or relating to A.S.'s neurofibromatosis diagnosis, which the ALJ explicitly considered in her determination. Furthermore, the ALJ stated:

> In determining the degree of limitation in each of the six functional domains for the period since June 1, 2017, the undersigned has considered *all symptoms* and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 . . . .

R. 27 (emphasis added); *see also* 20 C.F.R. § 404.1529 (providing that, in determining whether a claimant is disabled, the ALJ will consider *all* the claimant's symptoms). The ALJ also stated: "Since June 1, 2017, the impairments [A.S.] had at the time of the CPD *as well as his current impairments* have not functionally equaled the Listing of Impairments . . . ." R. 20 (emphasis added). The Eleventh Circuit has made clear that these statements are sufficient to demonstrate that the ALJ considered all of A.S.'s impairments—both severe and non-severe—in reaching her disability determination. *See Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("In performing his analysis, the ALJ stated that he evaluated whether [the claimant] had an 'impairment or combination of impairments' that met a listing and that he considered 'all symptoms' in determining her RFC. Under our precedent, those statements are enough to demonstrate that the ALJ considered all necessary evidence.") (citations omitted).

Additionally, even if it was not evident on the face of the ALJ's decision that she considered all necessary evidence, Plaintiff wholly fails to demonstrate with any level of specificity how any of those alleged impairments cause additional or more severe limitations than those found by the ALJ or why they necessitate a finding of disability. *See Larry v. Comm'r of Soc. Sec.*, 506 F. App'x 967, 968-69 (11th Cir. 2013) (noting that the claimant bears the burden of proving he is disabled and, accordingly, is responsible for producing evidence to support his claim) (citing *Ellison*, 355 F.3d at 1276). Indeed, the *only* alleged impairment Plaintiff specifically identifies as having not been properly considered by the ALJ is hydrocephalus, which Plaintiff contends is a "listed compassionate need impairment." Doc. 16 at 9-10.

First, Plaintiff has failed to point to evidence in the record demonstrating that A.S. was diagnosed with or treated for hydrocephalus or suffered any limitations therefrom. In support of her claim of hydrocephalus, Plaintiff cites "CHILDREN'S UAB, DR. SALIM, EXHIBIT 10F." Doc. 16 at 10. However, Exhibit 10F does not contain any medical documents by Dr. Salim; instead, it contains Dr. Ghostley's April 2017 mental evaluation discussed above. R. 613-615. Under a subsection entitled History of Illness, the evaluation states: "[A.S.] presented along with his mother for purposes of this examination. She indicated that he has . . . Hydrocephaly." R. 614. It does not appear that Dr. Ghostley conducted any evaluation or objective testing to confirm the presence of hydrocephaly or

that Dr. Ghostley's mention of hydrocephaly was based on anything other than Plaintiff's statement.[5]

Regardless, in her decision, the ALJ specifically noted: "In April 2017, [A.S.] was examined on a consultative basis by David C. Ghostley, Psy.D. (Exhibit 10F). [A.S.'s] mother advised that [A.S.] has . . . hydrocephaly . . . ." R. 29. Thus, the presence of hydrocephalus was explicitly acknowledged by the ALJ. However, as discussed above, the ALJ ultimately assigned little weight to Dr. Ghostley's opinion that A.S. was "markedly impaired due to a confluence of physical and mental health problems" because the finding was "vague and lacking objective support in that Dr. Ghostley is not qualified to assess [A.S.'s] physical impairments" and "not generally supported by the evidence of record as a whole." R. 32.

Assuming A.S. was indeed diagnosed with hydrocephalus by someone qualified to assess physical impairments, Plaintiff nevertheless fails to state what resulting limitations, if any, the ALJ failed to consider. Plaintiff merely states that it is a "listed compassionate need impairment." Doc. 16 at 9-10. To the extent Plaintiff contends that hydrocephalus is a Compassionate Allowance listed in the Social Security Administration's Program Operations Manual System ("POMS") DI 23022.296, it appears she is incorrect. *See* POMS DI 23022.080, List of Compassionate Allowances Conditions. It does not appear that hydrocephalus is a listed Compassionate Allowance. *See id.* To the contrary, the similarly

---

[5] The Court is not suggesting that this demonstrates A.S. does not have hydrocephalus; it is certainly possible that A.S. was indeed clinically diagnosed with hydrocephalus at some point, but Plaintiff has not identified when that diagnosis occurred, where it can be found in the record, or any specific limitations A.S. allegedly suffers as a result.

spelled "hydranencephaly" is listed, the description of which specifically states, "Hydranencephaly should not be confused with hydrocephalus." DI 23022.760. Plaintiff does not allege, nor has the Court found anything in the record suggesting, that A.S. suffered from hydranencephaly.

Even if hydrocephalus was a listed Compassionate Allowance, that would not necessitate a finding of disability. "Compassionate Allowances are a way to quickly identify diseases and other medical conditions that, by definition, meet Social Security's standards for disability benefits." *Compassionate Allowances*, Official Social Security Website.[6] Compassionate Allowances help the Social Security Administration "reduce waiting time to reach a disability determination for individuals with the most serious disabilities." *Id.* Thus, a condition qualifying for Compassionate Allowance simply expedites the process for evaluation; it does not dictate whether a person is disabled. *See* DI 23022.760 ("Adjudicators may, *at their discretion*, use the Medical Evidence of Record or the listings suggested to evaluate the claim. However, the decision to allow or deny the claim rests with the adjudicator.") (emphasis added).

Plaintiff failed to identify any impairments or resulting limitations the ALJ did not consider; thus, Plaintiff has not met her burden of proving disability. *Larry*, 506 F. App'x at 968-69 (citing *Ellison*, 355 F.3d at 1276). Indeed, it is well settled that the mere presence of an impairment or combination of impairments does not, without more, necessitate a finding of disability. *See, e.g., Hutchinson v. Astrue*, 408 F. App'x 324, 326 (11th Cir.

---

[6] https://www.ssa.gov/compassionateallowances/ (last visited September 22, 2021).

2011) ("[P]roof of the mere existence of impairments does not prove the extent to which they limit a claimant's abilit[ies]."); *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment . . . .") (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). As discussed above, the ALJ provided numerous citations to the record throughout her decision in support of her finding that A.S. was generally medically stable and primarily treated conservatively; a hydrocephalus diagnosis, alone, does not change that. Thus, the ALJ did not err on this ground.

### C.     Substantial evidence supports the ALJ's decision.

Plaintiff argues that A.S. has marked limitations in the domains of acquiring and using information, interacting and relating with others, and caring for oneself and extreme limitations in the domains of attending and completing tasks, moving about and manipulating objects, and health and physical well-being. Doc. 16 at 14-16. In support of her claim, Plaintiff cites primarily to her own testimony at the hearing before the ALJ. *Id.* In response, the Commissioner argues that substantial evidence supports the ALJ's determination that, since June 1, 2017, A.S. did not have an impairment or combination of impairments that functionally equaled a Listing.

As to the first domain of acquiring and using information, the ALJ noted that Plaintiff alleged A.S. could deliver phone messages; repeat stories he had heard; explain why he did something; talk with friends and family; read capital and small letters; read and understand simple sentences; print letters and his name; spell most 3-4 letter words; and

tell time. R. 22, 259-260. She noted that, while A.S.'s teacher found that he had a serious problem in a few areas, such as expressing ideas in written form and in reading and comprehending written material, other problems noted were slight. R. 22, 280. Drs. Rosenbaum and Harper—whose opinions she properly assigned significant weight—found that A.S. had a less than marked limitation in this area, with his recent intelligence testing revealing an IQ of 81 and no required medication for focus and attention. R. 22, 75. Additionally, although the evidence reflects that A.S. had a speech and language impairment that had an adverse impact on his progress in reading, he was above grade-level in math. R. 22. Upon consideration of a host of evidence both favorable and unfavorable to her decision[7], she determined that "a review of the evidence as a whole [did] not reflect any limitation in this domain that could be characterized as marked or extreme." R. 22.

As to the second domain of attending and completing tasks, the ALJ noted Plaintiff's report that A.S. completed homework and chores most of the time. R. 23, 264. A.S.'s teacher found a "very serious" problem in completing class work and homework and an "obvious" problem in carrying out multi-step instructions and organizing his own things, but only slight to no problems in all ten additional parts of the domain. R. 23, 282. Again, Drs. Rosenbaum and Harper opined that A.S. had a less than marked limitation in

---

[7] In her brief, Plaintiff argues that "[t]he ALJ improperly relied on discrete findings from various records that were taken out of context" and that an ALJ "may not cherry-pick evidence to support the conclusion that a claimant is not disabled." Doc. 16 at 21-22. Plaintiff does not cite to any factual findings she believes the ALJ took out of context or any evidence in the record she believes was ignored. Upon review of the ALJ's decision, it appears the ALJ expressly considered substantial evidence throughout the record both bolstering and undermining a finding of disability, rather than relying solely on evidence favoring her decision.

this domain. R. 23, 78. A.S. had missed a great deal of school due to medical issues, in addition to unexplained or unexcused absences, which the ALJ identified as a factor that may explain some of A.S.'s issues in this domain. R. 23, 280, 303. Upon review as a whole, the ALJ determined that the record "[did] not reflect significant limitations in this domain" and, therefore, that A.S. had a less than marked limitation in this domain. R. 23.

As to the third domain of interacting and relating with others, the ALJ noted Plaintiff's February 2017 report that A.S. had friends his own age, generally got along with her and other adults, generally got along with teachers, and played team sports. R. 24, 262. She noted Plaintiff's report that A.S. played baseball and that, although he did not catch and hit the ball well, everyone loved A.S. and kept him on the team anyway. R. 24, 262. She noted that A.S.'s teacher observed an "obvious" problem in introducing and maintaining relevant topics of conversation but did not observe any other problems in this domain.[8] R. 24, 281. Drs. Rosenbaum and Harper opined that A.S. had a less than marked limitation in this domain, in consideration of his history of language concerns. R. 24, 79. Additionally, although A.S. continued to receive speech therapy services and had some ongoing articulation problems, his speech had improved greatly since he first started treatment. R. 24, 309, 312, 315, 317, 525-26. She noted Plaintiff's testimony that A.S. gets along well with his similarly aged cousin. R. 24, 52-53. Thus, the ALJ determined that the evidence as a whole reflects that A.S. had a less than marked limitation in this domain.

---

[8] It appears A.S.'s teacher also observed an "obvious" problem in using vocabulary and grammar to express thought and ideas. R. 281. However, the ALJ is correct that the teacher observed no problems in all eleven additional parts of the domain. Additionally, the ALJ addressed A.S.'s speech impairment in her decision.

As to the fourth domain of moving about and manipulating objects, the ALJ cited Plaintiff's report that A.S. is able to walk, but not fast, able to run, but not for long, and able to throw a ball and Plaintiff's report that A.S. can swim with a floaty, use scissors, and work videogame controls but is unable to ride a bike, jump rope, or use roller skates. R. 25, 261. She noted that A.S.'s teacher did not report any problems whatsoever in this domain. R. 25, 283. And, Drs. Rosenbaum and Harper opined that A.S. had a less than marked limitation in this domain. A.S. reported intermittent musculoskeletal pain related to his neurofibromatosis (R. 25, 656-58), and the ALJ recognized musculoskeletal findings include flat feet, heel valgus, and mild non-pathologic knee laxity. R. 25, 511. She recognized A.S. had mild asthma and could be expected to have some difficulty sustaining activities such as running, jumping, and climbing, which would be normal for a child his age. R. 25, 656. The ALJ identified Plaintiff's testimony that A.S. had been prescribed leg braces and a wheelchair for as-needed use, but she stated that no evidence was submitted to support that assertion. R. 25. Upon review of all the evidence, the ALJ determined that A.S. had a less than marked limitation in this domain. R. 25.

As to the fifth domain of caring for oneself, the ALJ noted Plaintiff's report that A.S. does not use a zipper by himself, does not button his own clothes, does not choose his own clothes, does not help around the house, does not obey safety rules, and does not accept criticism. R. 25, 263. The ALJ also took note of Plaintiff's report that A.S. was getting better at tying shoes, he takes a bath or shower without help, brushes his teeth, combs or brushes his hair, washes his hair by himself, eats independently, picks up and puts away toys, hangs up clothes, does what he is told most of the time, and gets to school on time.

R. 26, 263. At the hearing, Plaintiff testified that A.S. was now doing quite well in terms of caring for his personal needs. R. 26, 49. The ALJ acknowledged that A.S.'s teacher reported no problems whatsoever in this domain (R. 26, 284) and that Drs. Rosenbaum and Harper opined that A.S. had a less than marked limitation in this domain. R. 26, 79. Upon review of all the evidence, the ALJ determined that "there [was] no evidence of significant emotional or behavioral problems, and [A.S.]'s self-care skills [were] age-appropriate." R. 26. Accordingly, the record as whole supported a finding that A.S. had no limitation in this domain. R. 26.

Finally, as to the sixth domain of health and physical well-being, the ALJ noted A.S.'s neurofibromatosis, which Plaintiff alleged had no cure, caused new tumors to develop frequently, and caused pain and many limitations (R. 27, 47-48, 261, 656-58), and A.S.'s required medical follow-up for neurofibromatosis and asthma as well as speech therapy (R. 27, 261, 315, 525-26, 656-58). The ALJ recognized that A.S. reported intermittent pain and headaches and that he had missed numerous days of school, although to her it was unclear his medical problems necessitated that degree of absenteeism. R. 27, 261, 279, 303, 656-58. She noted Plaintiff's non-severe impairments and determined that they were asymptomatic or readily responsive to treatment and that Drs. Rosenbaum and Harper opined that A.S. had a less than marked limitation in this domain. R. 27, 79-80. However, based on a review of the evidence as a whole, the ALJ found that the evidence supported a finding that A.S. had a marked limitation in this domain. R. 27.

In the Social Security context, substantial evidence is simply "more than a mere scintilla"; it "means only . . . such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Yanes v. Comm'r, Soc. Sec. Admin.*, No. 20-14233, 2021 WL 2982084, at *4 (11th Cir. July 15, 2021) (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). Upon consideration of the ALJ's decision, the Court finds that there is more than a mere scintilla of evidence in support of the ALJ's determination. The ALJ explicitly addressed a substantial portion of the record in her decision both favoring and not favoring a finding of disability, rather than relying solely on evidence favoring her decision. As such, the Court *must* affirm, even if the Court would have reached a contrary result as finder of fact and even if the evidence preponderates against the Commissioner's findings. *Ellison*, 355 F.3d at 1275; *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (citing *MacGregor*, 786 F.2d at 1053).

Plaintiff argues—correctly, though without specific citations to the record—that there is evidence in the record that could support a finding that A.S. is disabled. However, this Court's review "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson*, 284 F.3d at 1221 (citations omitted). In this case, the Court finds that substantial evidence supports the findings of the Commissioner and that the correct legal standards were applied. Thus, the Court is not entitled to decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *See Winschel*, 631 F.3d at 1178; *Gibbs*, 686 F. App'x at 800.

## VI.    CONCLUSION

For the reasons set forth above, the undersigned finds that the ALJ's determinations are supported by substantial evidence and that the ALJ correctly applied the law.

Accordingly, it is ORDERED that:

1.      The decision of the Commissioner is AFFIRMED.

2.      A final judgment will be entered separately.

DONE this 28th day of September, 2021.


                              /s/ Kelly Fitzgerald Pate
                              KELLY FITZGERALD PATE
                              UNITED STATES MAGISTRATE JUDGE